THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
EUSEBIO SANTIAGO, Defendant and Appellant.

No. 10667.  Argued December 20, 1944.—Decided February 23, 1945.

*Leopoldo Tormes García* for appellant.  *R. A. Gómez, Prosecuting At-*
*torney (Fiscal)*, and *Luis Negrón Fernández, Assistant Prosecut-*
*ing Attorney,* for appellee.  *Martín Avilés Brasero* for the Depart-
ment of Labor.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the
court.

Section 1 of Act No. 114, approved May 7, 1942, entitled
"An Act to protect workmen and employees against the pre-
judicial discrimination of their employers; to fix penalties
for violations of this Act, and for other purposes," reads
as follows:

. "Section 1.—Any employer who performs *any act of prejudicial discrimination against his workmen or employees, or any of them,* because the same have organized, or taken part in activities of, a labor union, or have demanded the making of a collective labor agreement, or have participated in a strike or in a claim for better wages and working conditions, *or because they are affiliated with a certain political party,* shall be guilty, in the case of each workmen or employee against whom he may have performed an act of prejudicial discrimination, of a misdemeanor and, upon conviction, . . . etc." (Italics ours.)

Section 2 of the same Act provides that "dismissal without just cause," by the employer, of workmen or employees against whom the employer performs any of the acts of prejudicial discrimination comprised in § 1 of the Act, shall constitute *prima facie* evidence of the violation thereof.

The complaint filed against defendant-appellant charges that the latter, on September 30, 1943, while acting in his capacity as overseer of a cane plantation owned by Sucesión de Lucas P. Valdivieso, performed an act of prejudicial discrimination in that "he refused to further employ the workman Antonio Velázquez (in weeding and other work connected with the cultivation of cane) at a time when there was work to be done in the aforesaid Dolores Estate . . . . thus discharging him from his weeding work or employment (which he performed at that time) without just cause, to wit, because said workman was a member of, or affiliated with, the Popular Democratic Party, which is a political party." It is further alleged in the complaint that on the day of the occurrence, Velázquez and other workmen requested employment from the defendant and thereupon the latter answered that "they would not be employed because all of them were Populars and that he knew that they had been cheering for the Popular Party the day before and on various occasions while riding on the very truck which was bringing them back from their work."

After the case was tried before the District Court of Ponce, the defendant was sentenced to pay a fine of $100

or to be confined in jail in default of such payment, and thereupon he appealed to this court. In support of his appeal he urges (1) that the judgment is contrary to law and the evidence, and (2) that Act No. 114 of 1942, as applied to the facts established by the evidence, would be unconstitutional and in conflict with the first, fifth, sixteenth, and seventeenth paragraphs of § 2 of the Organic Act of Puerto Rico and the Federal Constitution.

The questions involved in this appeal are: (1) Is the evidence sufficient to justify the conviction of the defendant?; and (2) does Act No. 114 of May 7, 1942, violate any of the constitutional provisions relied on by the appellant?

Let us summarize the evidence submitted to the lower court.

The first witness for the prosecution was the workman Antonio Velázquez, who stated that for many years he had been working for Sucesión Valdivieso in the Coto Plantation, in Peñuelas; that on the day of the occurrence, when he came to get on the truck which was to carry him to his work, the defendant objected and shouted "that he could not board the truck to go to work because the defendant had learned that he (the witness) had been cheering for the Popular Party and that the estate did not allow any Populars on its premises or thereabouts"; that they applied for work several times but it was refused to them "because we were members of a political party," the Popular Democratic Party; that on September 29, 1943, the day before that of the occurrence, he worked in the Dolores Plantation, in the ward of Tallaboa, Peñuelas, under the direction of Rafael Santiago and the foreman Francisco Luciano; that the Coto Plantation belonging to Sucesión Valdivieso is quite far from the Dolores Plantation; that on the days preceding September 30 he worked in the Dolores Plantation, but that in order to go to said plantation he had to board the truck in front of the defendant's house; that all he had to do on the day of the occurrence in the Coto Plantation, of which the

defendant was the overseer, was to board the truck in order to go to his work in the Dolores Plantation where he had to work under the direction of Rafael Santiago; that the persons who supervised the work performed by the witness and other laborers in the Dolores Plantation were Rafael Santiago and the foreman. Upon being further examined by the district attorney, he stated that the defendant was the person "who had requested us to work in the Dolores Plantation"; that on September 30 the witness did not know to which of the two plantations he would be send to work; that they used to go to the Coto Plantation and then the defendant would direct them to the place where they should go to work; that it was the defendant who assigned to them every day the place where they should work; that each plantation has its own overseer, but that there was only one foreman to lead the laborers to the various plantations and he was under the control of the defendant Eusebio Santiago; that on September 30 he was not sent to his work, by order of the defendant.

Félix Santiago, another laborer, testified that he worked also for Sucesión Valdivieso; that on September 30, "while riding on a truck owned by the estate, we were suspended from work, because we were cheering for the Populars." Upon being questioned twice by the district attorney regarding the statements made by the defendant at the time, the witness answered: "That he suspended us." He testified further that he worked there under the direction of the defendant but that he was out of work for four months; that afterward he applied for employment and it was given to him; that employment there is scarce; that when there is no work and many laborers apply, the work is taken away from some of them and given to others; that prior to September 30, he worked daily in the Dolores Plantation of which Rafael Santiago was the overseer and Juan Luciano was the foreman, and that the defendant was the overseer of the Coto Plantation.

Blas Colón, à laborer employed in the Dolores Plantation, gave the following version of the occurrence: "We, the laborers who were there, went to the square in front of the house of Eusebio Santiago, in order to board the truck which was to carry us to our work in the Dolores Plantation and then Mr. Eusebio Santiago shouted to us that there was no work for us because we were Populars"; that that happened at the Coto Plantation belonging to Sucesión Valdivieso; that on that day no work was assigned to them; that the person in charge of directing them to work in either of the two plantations was the defendant; that he worked under the direction of the defendant who was the one who hired them and assigned them the place for working; that since that day he has not worked at any place owned by the Sucesión Valdivieso.

Three other witnesses testified to the same effect as the preceding ones.

Carlos J. Aguayo, Field Supervisor (*Jefe de Cultivo*) of Sucesión Valdivieso, testified as a witness for the defense, that the Dolores Plantation and the Coto Plantation are 5 kms. distant from each other; that the defendant serves as overseer of the Coto Plantation and Rafael Santiago as overseer of the Dolores Plantation; that the laborers for each of said plantations are hired by the respective overseers; that on September 30, the defendant Eusebio Santiago had absolutely nothing to do with the Dolores Plantation; that on the day of the occurrence the laborer Antonio Velázquez was working for Rafael Santiago, in the Dolores Plantation; that on that day the work was done in either of the two plantations because of the excessive rain; for on the 29th it rained considerably in the whole district of Peñuelas, and it was he who ordered that all work be stopped.

Rafael Santiago, overseer of the Dolores Plantation, testified that Antonio Velázquez worked there under his direction; that he, the witness, was the person who directed

the work at the Dolores Plantation, he being answerable to the owners of the property; that the defendant had nothing to do with the Dolores Plantation as he would only employ laborers to work in the Coto Plantation; that on September 30, 1943, no laborers were employed in the weeding work, because of the rain, and that it was he who, acting under instructions from his chief, Carlos J. Aguayo, had directed the foreman not to bring any laborers for work; and that the work was suspended for two or three days.

The defendant, testifying in his own behalf, stated that on the day of the occurrence, at about half past six in the morning, Velázquez and other laborers arrived and the truck came immediately thereafter. He had already received orders from his superiors to the effect that he should not send any laborers because it had rained a great deal and no work was to be done until further notice; that he suspended the work and told them that he had received orders from the overseer; that the words that he used were: "there is no work today," whereupon the laborers said: "that must be because we are not with you," and then he replied: "there is no work because it has rained and the office (*Hacienda*) has called me up"; that the person who had to engage the laborers was Rafael Santiago, because it was the latter who was in charge of the work at the Dolores Plantation, and it was Rafael Santiago who had instructed him not to send any laborers on that day because it had rained a great deal.

The facts alleged in the complaint, which we regard as essential and which must therefore be proved beyond a reasonable doubt, are:

1. That the defendant served or acted as overseer, with power to hire and discharge workmen for Sucesión de Lucas P. Valdivieso.

2. That on September 30, 1943, the defendant refused to employ the laborer Antonio Velázquez in the work of weeding the cane.

3. That there was no just cause for the refusal of the defendant to employ Velázquez or to discharge him from his employment.

4. That defendant's refusal was based solely on the fact that Velázquez was affiliated with the Popular Democratic Party.

The evidence regarding all of those facts was conflicting. The court settled such conflict against the defendant and, as the evidence for the prosecution, to which the court accorded credit, was sufficient to support the judgment, we fail to see any reason for disturbing its findings to the effect that the defendant acted as overseer with power to hire laborers, reduce their number, and discharge them for just cause or when there was no work in which to employ them; and that since September 30, 1943, the defendant had refused to employ Velázquez and other laborers without just cause and due solely to the fact that said laborers were affiliated with the Popular Democratic Party of Puerto Rico.

Since Act No. 114 is a penal statute, any violation of its provisions must be proved beyond a reasonable doubt. In our judgment, the evidence introduced in the present case complies with such requisite.

Having reached the conclusion that the evidence is sufficient to support the judgment appealed from, we will now proceed to consider and determine the constitutional question raised by the appellant.

Act No. 114 of 1942, undoubtedly inspired by the essential purpose of the National Labor Relations Act, known as the Wagner Act (U.S.C.A. Tit. 29, § 151 *et seq.*), which is to protect the workmen against unfair practices by the employers, differs from the Wagner Act, among other things, (1) in that it does not confine itself to protecting the workmen against acts on the part of the employers which tend to punish his workmen for having participated in labor union activities; but it goes further and extends its protection to the political activities of the workmen; and (2) in that the

remedy granted by the Wagner Act to a workman who has been unlawfully discharged from his employment is his reinstatement therein, with back pay, whereas Act No. 114 leaves the workman's dismissal unaffected but subjects the employer to liability for a misdemeanor, which may be punished by a fine of from $100 to $500 or by imprisonment in jail for a term of not less than thirty days nor more than ninety days, or by both penalties, in the discretion of the court.

Act No. 114 of 1942 does not deprive the employer of its right to dismiss from his employment any workman who is a member of a labor union or is affiliated with a certain political party, provided that such dismissal is based on a just ground. The prohibition of the insular statute is directed solely against an employer who, under cover of his acknowledged right to discharge his workmen for a just cause, abuses such right and interferes with the workmen's free exercise of their right to join a labor union or become affiliated with a political party, by punishing them with the loss of their employment.

The right of workmen to organize and join labor unions without being subjected, on that account, to the penalty of discharge by their employers, is already firmly established and protected by the Federal statutes, by the statutes enacted in a majority of the states, and by our Act No. 42 of November 30, 1917. The Congress, the state legislatures, and our own legislative assembly have deemed it advisable to protect the workmen in the exercise of their right to freely associate themselves, as it has been thought that only in this way can the workmen secure for themselves and for their dependents a standard of living which is in consonance with the national welfare.

The Insular Legislature, going still further than Congress and the state legislatures, has sought to guaranty the free exercise by the workman of his right to join any polit-

ical party of his choice without such action rendering him subject to punishment by dismissal at the hands of his employer. Since the continental statutes have not reached that point, the parties herein have not cited to us, nor have we been able to find, any precedents which might aid us in determining whether the Act in question is in conflict with any provision of the Organic Act or the Federal Constitution.

In our judgment, the same arguments and grounds adduced in favor of the constitutionality of the Wagner Act may be invoked to support the constitutional validity of the local Act under discussion. If a statute may, without violating any constitutional provision, prohibit an employer from discharging a workman who, seeking to improve his living conditions, has become affiliated with a labor union, unless there is a just cause for such discharge, we fail to see any reason why an employer can not be prohibited from dismissing a workman without just cause and solely because of the fact that he is affiliated with a certain political party.

The workman, being a citizen, has a right to become affiliated with any political party which, in his judgment, will interest itself more than others in the defense of the welfare and of the rights of the working class. Such a right is as sacred and worthy of protection as that of joining a labor union or organization. The Legislature has sought to protect the citizen workman in the exercise of his right to share in the insular political activities, by forbidding his dismissal from his employment as a punishment for his joining a certain political party. We do not think that it can be successfully maintained that such a prohibition imposed by law on the employer deprives the latter of his property without due process of law or denies to him the equal protection of the laws. The law acknowledges the right of the employer to dismiss a workman for just cause but it provides that the mere fact of his being affiliated with a certain political party shall not constitute a just cause.

The judgment appealed from should be affirmed.